UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EDWARD J. STEINER, <br><br>         Plaintiff, <br><br>   v. <br><br> BRENT KEMPSTER, <br><br>         Defendant. | Case No. C22-5526-RJB-SKV <br><br> REPORT AND RECOMMENDATION |

INTRODUCTION

This is a civil rights action proceeding under 42 U.S.C. § 1983. Plaintiff Edward J. Steiner is a state prisoner who is currently confined at the Washington State Penitentiary in Walla Walla, Washington. Plaintiff alleges Defendant Brent Kempster, a police officer with the La Push Police Department ("LPPD"),[1] violated Plaintiff's Fourth Amendment rights by using excessive force to detain him on August 22, 2021, in the Lonesome Creek Store[2] in La Push, Washington. Dkt. 7 at 4–5. On April 4, 2023, Defendant Kempster filed the present Motion to

---

[1] Defendant Kempster is now employed as a police officer with the Suquamish Police Department. Dkt. 35 ¶ 2.

[2] In the Amended Complaint, Plaintiff refers to the store where the alleged incident of excessive force occurred as both the "Lone Creek Store" and the "Lonesome Creek Store." *See* Dkt. 7 at 4–5. The "Lonesome Creek Store" is the correct name. *See* Dkt. 40 ¶¶ 2–3, 5.

REPORT AND RECOMMENDATION - 1

Dismiss, Dkt. 34, arguing the Court lacks subject-matter jurisdiction over this case because Defendant Kempster was not acting under color of state law at the time of the alleged incident—a jurisdictional requirement for a § 1983 claim.

The Court, having thoroughly considered the parties' briefing and the relevant record, finds that Defendant's Motion, Dkt. 34, should be GRANTED for the reasons explained herein. As a result, Plaintiff's pending Motion for All Video, Photos, Audio, Property, Booking Sheet, Clothes, and Court Recordings, Dkt. 18; Motion for All Video, Audio, and Property, Dkt. 23; and Motion for Expert Witness Video and Audio, Dkt. 29, should be DENIED as moot.

BACKGROUND

The Amended Complaint alleges Defendant Kempster, a LPPD police officer, used excessive force against Plaintiff when detaining him[3] in the Lonesome Creek Store on August 22, 2021, in violation of Plaintiff's Fourth Amendment rights. Dkt. 7 at 4–5. According to Plaintiff, Defendant Kempster ordered Plaintiff to put his hands behind his back, and when Plaintiff complied, Defendant Kempster "spun [him] around and punched [him] twice in the sternum with a handcuff key." *Id.* Defendant Kempster then "tripped [Plaintiff] to the floor and was putting all his weight" on Plaintiff, suffocating him. *Id.* at 5. Plaintiff alleges Defendant Kempster was "breathing heavy" on him and "seemed to be getting sexual gratification out of it[,]" and that Defendant Kempster was "on top of [Plaintiff] for quite a while." *Id.* Plaintiff further alleges he was then "handcuffed, bleeding and injured sitting outside the store and U.S. Post Office for hours[,]" *id.*, and that when "the transporting officer came he took pictures of

---

[3] Plaintiff indicates Defendant Kempster arrested him during the incident in question. *See* Dkt. 42 at 9. Because Plaintiff is non-Indian, *see* Dkt. 35 ¶ 17; Dkt. 40 at 11, Defendant Kempster, a tribal police officer, lacked the authority to arrest him. *See Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191, 21 (1978). Defendant Kempster did, however, possess the authority to temporarily detain Plaintiff, *United States v. Cooley*, 141 S. Ct. 1638, 1646 (2021), which Defendant Kempster did, Dkt. 35 ¶ 17.

REPORT AND RECOMMENDATION - 2

[Plaintiff's] injuries" and Plaintiff "was relieved a bit[,]" *id.* at 7.  Per Plaintiff, the "transporting officer" took Plaintiff to the hospital.  *Id.* at 8.

At the time of the alleged incident, Defendant Kempster was on duty as a LPPD police officer, was wearing a LPPD police uniform, and was driving a marked LPPD vehicle.  Dkt. 35 ¶ 6.  The Lonesome Creek Store is wholly owned and operated by the Quileute Tribe and is located within the boundaries of the Quileute Reservation, on land held in trust by the United States for the tribe.  Dkt. 40 ¶¶ 2–7.  At the relevant time, there existed no cross-deputization or cooperative law enforcement agreement between LPPD and the State of Washington, Clallam County, or the City of Forks.  Dkt. 35 ¶ 9; Dkt. 36 ¶ 6; Dkt. 37 ¶¶ 6–7; Dkt. 38 ¶¶ 3–4.

Defendant Kempster detained Plaintiff under Section 13.7.4 of the Quileute Tribe's Law & Order Code.  Dkt. 35 ¶ 18.  Following this detention, a Clallam County sheriff's deputy arrived and transported Plaintiff to Clallam County Jail.  Dkt. 40 at 10–12.  Plaintiff was charged, prosecuted, and convicted in Clallam County Superior Court with Assault in the Third Degree—Law Enforcement Officer and Harassment (Bodily Injury).  *Id.* ¶ 8; *id.* at 14–18.

On April 4, 2023, Defendant Kempster filed the present Motion to Dismiss, arguing (among other things) that the Court lacks subject-matter jurisdiction over this case because Defendant Kempster was acting under color of tribal law, not state law, at the time of the alleged incident.

## DISCUSSION

### A. Legal Standards

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show: (1) he suffered a violation of rights protected by the United States Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of state law.  *See*

REPORT AND RECOMMENDATION - 3

1 *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).  A person acts under color of state law
2 when he "exercise[s] power 'possessed by virtue of state law and made possible only because the
3 wrongdoer is clothed with the authority of state law.'" *Johnson v. Knowles*, 113 F.3d 1114, 1117
4 (9th Cir. 1997) (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988)).  The person "must be a person
5 who may fairly be said to be a state actor." *West*, 487 U.S. at 49 (quoting *Lugar v. Edmondson
6 Oil Co., Inc.*, 457 U.S. 922, 937 (1982)).  Conduct under color of state law is a jurisdictional
7 requisite for a § 1983 claim.  *See id.* at 46; *Polk Cty. v. Dodson*, 454 U.S. 312, 315 (1981).  *See
8 also Gritchen v. Collier*, 254 F.3d 807, 812 (9th Cir. 2001) ("Acting under color of state law is 'a
9 jurisdictional requisite for a § 1983 action.'") (quoting *West*, 487 U.S. at 46).  In other words,
10 absent such conduct, the court lacks subject-matter jurisdiction.

11 The Court must dismiss a case over which it lacks subject-matter jurisdiction.  Fed. R.
12 Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the
13 court must dismiss the action.").  Courts must presume that a claim lies outside the subject-
14 matter jurisdiction of federal courts, and "the burden of establishing the contrary rests upon the
15 party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377
16 (1994).  The plaintiff must allege facts, not mere conclusions, to invoke federal subject-matter
17 jurisdiction. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

18 A challenge to subject-matter jurisdiction can be either facial or factual. *White v. Lee*,
19 227 F.3d 1214, 1242 (9th Cir. 2000).  "A 'facial' attack accepts the truth of the plaintiff's
20 allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'"
21 *Leite*, 749 F.3d at 1121 (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir.
22 2004)).  A factual challenge, on the other hand, "contests the truth of the plaintiff's factual
23 allegations, usually by introducing evidence outside the pleadings." *Id.*

REPORT AND RECOMMENDATION - 4

When a defendant raises a factual challenge to the court's subject-matter jurisdiction, as Defendant Kempster does here, the Court "need not presume the truthfulness of the plaintiff's allegations," *White*, 227 F.3d at 1242, and its consideration of evidence beyond the complaint does not convert the motion into one for summary judgment, *Safe Air*, 373 F.3d at 1039. In such instances, "the plaintiff must support her jurisdictional allegations with 'competent proof,' under the same evidentiary standard that governs in the summary judgment context." *Leite*, 749 F.3d at 1121 (internal citation omitted). "The plaintiff bears the burden of proving by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met." *Id.* "[I]f the existence of jurisdiction turns on disputed factual issues, the district court may resolve those factual disputes itself." *Id.* at 1122.

B.  Defendant Kempster's Motion to Dismiss

To establish subject-matter jurisdiction over Plaintiff's § 1983 claim, Plaintiff must demonstrate that Defendant Kempster was acting under color of state law at the time of the alleged incident of excessive force. *West*, 487 U.S. at 49. In other words, Plaintiff must demonstrate that Defendant Kempster was exercising power granted to him by the state. *See Johnson*, 113 F.3d at 1117. Because the undisputed evidence demonstrates that Defendant Kempster was exercising power granted to him by the tribe, and not the state, Plaintiff has failed to make such a showing.

It is undisputed that the LPPD is the police department for the Quileute Tribe—a sovereign tribal entity. Dkt. 35 ¶ 7; Dkt. 36 ¶ 5. It is further undisputed that Defendant Kempster was acting in his capacity as a LPPD police officer when detaining Plaintiff, Dkt. 35 ¶¶ 6–11; Dkt. 36 ¶¶ 8–9, that the incident occurred on tribal land, Dkt. 40 ¶¶ 2–7, and that Defendant Kempster detained Plaintiff exclusively under the Quileute Tribe's Law and Order

REPORT AND RECOMMENDATION - 5

1   Code, Dkt. 35 ¶¶ 17–18.  The Ninth Circuit has held that tribal officers who are "authorized to
2   enforce state as well as tribal law, and proceed to exercise both powers[,]" are subject to liability
3   under § 1983.  *Bressi v. Ford*, 575 F.3d 891, 897 (9th Cir. 2009).  But here, the evidence
4   indicates that Defendant Kempster was only authorized to enforce tribal law, as there existed no
5   cross-deputization or cooperative law enforcement agreement between LPPD and the State of
6   Washington, Clallam County, or the City of Forks at the relevant time.  Dkt. 35 ¶ 9; Dkt. 36 ¶ 6;
7   Dkt. 37 ¶¶ 6–7; Dkt. 38 ¶¶ 3–4.  And while a Clallam County sheriff's deputy later arrived to
8   take over the case, this does not convert Defendant Kempster's exercise of tribal authority into
9   action taken under color of state law.  *Cf. Bressi*, 575 F.3d at 898 ("Merely referring suspected
10  federal law violations to the appropriate authorities is not tantamount to acting under color of
11  federal law.").

12  The Amended Complaint states that Defendant Kempster acted under color of state law.
13  Dkt. 7 at 5.  However, Plaintiff makes no factual assertions to support this allegation.  A naked
14  assertion that a defendant acted under color of state law, without any actual allegations of fact to
15  support the claim, does not state a viable claim under § 1983.  *See Garvis v. Carter*, CV-03-
16  0290-JLQ, 2006 WL 2228825, at *5 (E.D. Wash. Aug. 3, 2006).  *See also Leite*, 749 F.3d at
17  1121.

18  The Amended Complaint further alleges that the incident took place at both the
19  Lonesome Creek Store and the United States post office, contending they are connected to each
20  other.  Dkt. 7 at 4–5.  The evidence indicates the incident took place solely at the Lonesome
21  Creek Store.  Dkt. 40 ¶¶ 10–11; *id.* at 10.  But even assuming the truth of the assertion, it does
22  not change the fact that the incident occurred within the boundaries of the reservation, and that
23  Defendant Kempster was exercising tribal, not state, authority when detaining Plaintiff.

REPORT AND RECOMMENDATION - 6

Finally, Plaintiff argues that Defendant Kempster charged him with violations of Washington law. Dkt. 42 at 9. While it is true that Plaintiff was tried and convicted under Washington law, it was Clallam County—not Defendant Kempster, the LPPD, or the Quileute Tribe— that charged and prosecuted him. Dkt. 40 at 8–25. Defendant Kempster only detained Plaintiff under Quileute tribal law. Dkt. 35 ¶¶ 17–18; Dkt. 36 ¶¶ 8–9.

Because the evidence demonstrates that Defendant Kempster acted under color of tribal law, not state law, Plaintiff cannot maintain a § 1983 claim against him.[4] As a result, this matter should be dismissed for lack of subject-matter jurisdiction. Plaintiff's pending Motion for All Video, Photos, Audio, Property, Booking Sheet, Clothes, and Court Recordings, Dkt. 18; Motion for All Video, Audio, and Property, Dkt. 23; and Motion for Expert Witness Video and Audio, Dkt. 29, should be denied as moot.

## CONCLUSION

Based on the foregoing, this Court recommends that this matter be dismissed for lack of subject-matter jurisdiction. Further, Plaintiff's pending Motion for All Video, Photos, Audio, Property, Booking Sheet, Clothes, and Court Recordings, Dkt. 18; Motion for All Video, Audio, and Property, Dkt. 23; and Motion for Expert Witness Video and Audio, Dkt. 29, should be denied as moot. A proposed order accompanies this Report and Recommendation.

---

[4] Beyond this, the undisputed evidence demonstrates that Plaintiff was not deprived of any right under the United States Constitution, as required to state a claim under § 1983. The Court has concluded that Defendant Kempster acted exclusively under color of tribal law. Because tribes are not constrained by the Constitution, "no action under 42 U.S.C. § 1983 can be maintained in federal court for persons alleging deprivation of constitutional rights under color of tribal law." *R.J. Williams Co. v. Fort Belknap Hsg. Auth.*, 719 F.2d 979, 981–82 (9th Cir. 1983). *See also Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 56 (1978) ("As separate sovereigns pre-existing the Constitution, tribes have historically been regarded as unconstrained by those constitutional provisions framed specifically as limitations on federal or state authority.").

Defendant Kempster also argues that, in the alternative, the Court should dismiss this action for failure to exhaust tribal court remedies. Dkt. 34 at 13–15. However, because the Court has determined that it lacks subject-matter jurisdiction for the reasons stated above, it does not reach this issue.

OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **June 2, 2023**.

Dated this 10th day of May, 2023.

S. KATE VAUGHAN
United States Magistrate Judge